No. 12-1269

# In the United States Court of Appeals for the Seventh Circuit

MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., AND ILLINOIS CARRY,

Plaintiffs-Appellants,

v.

LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois, and HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police,

Defendants-Appellees.

Appeal from a Judgment of the United States District Court for the Central District of Illinois, The Hon. Sue E. Myerscough, District Judge
District Court No. 3:11-CV-3134

OPPOSITION TO MOTION TO STAY MANDATE FOR ADDITIONAL 30 DAYS

Plaintiffs-Appellants Michael Moore, Charles Hooks, Peggy Fechter, Jon Maier, Second Amendment Foundation, Inc., and Illinois Carry oppose Defendants-Appellees' motion for an additional 30 day stay of the mandate beyond the 180 days already granted, and in support of their opposition submit:

1. Defendants' motion is unauthorized by the Federal Rules of Appellate Procedure, plainly presented for dilatory reasons, fails to fully disclose the relevant factual circumstances, and otherwise lacks merit. Considering that the state's remedial legislation passed with overwhelming veto-proof majorities in both houses, as well as the Governor's deep and protracted involvement in this issue, the time for delay is over. This Court has spoken. The People of Illinois, through their representatives, have spoken. There must be some finality to this process. The motion should be denied.

2. The Court's original 180 day stay of the mandate was extraordinarily generous—especially in light of the fact that the fundamental "rights of the entire law-abiding adult population of Illinois" are being violated. *Moore* v. *Madigan*, 702 F.3d 933, 940 (7th Cir. 2012). The current stay is already double the length of the maximum stay that may be granted, absent good cause, pending the filing of a petition for certiorari. Fed. R. App. P. 41(d)(2)(B).

3. Indeed, the desire to seek Supreme Court review is the *only* authorized ground for seeking a stay of this Court's mandate.

Defendants cite no authority for a stay "pending disposition of newly passed legislation," Motion, at 1, and their citation to Fed. R. App. P. 41(d)(1) is inapposite. That subsection does not authorize any separate motions for a stay of the mandate. It merely provides that "[t]he timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion, unless the court orders otherwise." *Id.*

The only "motion" referenced in subsection (d)(1) is the motion provided for in subsection (d)(2)(A): "A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court." Defendants do not discuss their plans for seeking certiorari, but on April 26, 2013, Defendants applied to Justice Kagan for an extension of time to file their petition of certiorari by an additional 32 days, from May 23 to June 24, 2013. That petition was granted May 2, 2013. *See Madigan* v. *Moore*, U.S. Supreme Ct. 12A1053. That still leaves the gap between expiration of this Court's stay on June 9 and their new deadline for seeking certiorari, which could potentially be extended through July 22. *See* Sup. Ct. R. 13.5

3

(maximum 60 days extension of time to seek certiorari). Extending this Court's stay through July 8, as desired by Defendants, would fill the existing gap and close most of the optional remainder should Defendants obtain another extension to petition.

4.　Defendants do not attempt to satisfy the difficult, but well established standards governing stay motions under Rule 41(d)(2). "When a party asks this court to stay its mandate pending the filing of a petition for a writ of certiorari, that party must show that the petition will present a substantial question and that there is good cause for a stay." *Senne* v. *Vill. of Palatine*, 695 F.3d 617, 619 (7th Cir. 2012) (Ripple, J., in chambers) (citations omitted). "The grant of a motion to stay the mandate 'is far from a foregone conclusion.'" *Id.* (quoting 16AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3987.1 (4th ed. 2008)).

"[T]he party seeking the stay must demonstrate both 'a reasonable probability of succeeding on the merits' and 'irreparable injury absent a stay.'" *Senne*, 695 F.3d at 619 (quoting *Bricklayers Local 21 of Illinois Apprenticeship & Training Program* v. *Banner*

4

*Restoration, Inc.*, 384 F.3d 911, 912 (7th Cir. 2004) (Ripple , J., in chambers)) (internal quotation marks and other citations omitted).

"[I]n order to demonstrate a reasonable probability of succeeding on the merits of the proposed certiorari petition, a party must demonstrate a reasonable probability that four Justices will vote to grant certiorari and that five Justices will vote to reverse the judgment of this court." *Id.* (citing *California v. American Stores Co.*, 492 U.S. 1301, 1307 (1989); *United States* v. *Warner*, 507 F.3d 508, 511 (7th Cir. 2007) (Wood, J., in chambers); *Williams* v. *Chrans*, 50 F.3d 1358, 1350 (7th Cir. 1995) (per curiam)).

> In applying this standard, we must consider carefully the issues that the applicant plans to raise in its certiorari petition in the context of the case history, the Supreme Court's treatment of other cases presenting similar issues and the considerations that guide the Supreme Court in determining whether to issue a writ of certiorari.

*Id.* (citation omitted).

5.    As Defendants did not address the relevant guidelines for seeking a stay, discussion of the "reasonable probability of success" prong can be limited to observing that, considering the Supreme Court's decisions in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008)

5

and *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010), it is extremely unlikely that five justices would find the right to bear arms does not extend outside the home, or that the self-defense interest informing that right is diminished to the point of oblivion outside the home. The panel opinion's survey of the Supreme Court's guidance on the topic is argument enough.

6. Nor does equity aid Defendants. The fact that Illinois's legislative session would end on May 31, 2013 was presumably known to the Court, the Defendants, the Legislature, and the Governor. Granting that much time half a year ago, plus a little bit more,[1] should well have sufficed. Notably this delay well surpassed the normal time for seeking certiorari review, even accounting for the en banc rehearing procedure.

Nothing required the Legislature to wait until the last possible moment to pass a law. Many legislators are attorneys who should be used to working within court deadlines. The other 49 states provide ready legislative examples for regulating the carrying of guns in public,

---

[1]This Court did not prevent the Legislature and Governor from working through the end of the stay on June 9.

most of which are constitutional. And if the Attorney General wanted to, she could have petitioned for certiorari within the 90 days originally allotted from this Court's December 12, 2012 decision, Sup. Ct. R. 13.1; within 90 days from the denial of rehearing en banc, Sup. Ct. R. 13.3; or even within the extension already obtained from Justice Kagan—although that would not necessarily entitle Defendants to stay the mandate.

Just as this Court's extraordinary 180 day stay of the mandate was generous to the Legislature, so, too, was it very generous to the Governor. Respectfully, the notion that the Governor requires additional time to gather his thoughts about this subject is not well-taken. Like his fellow attorneys in the Legislature, the Governor should have budgeted time to think about this topic (which is not new to him) within the 180 days allotted by the Court.

Nor was the Governor a mere bystander to the process of responding to this Court's decision. The Governor has been an active participant in the process leading to passage of the remedial bill. Defendants argue that the Governor needs more time to consider the remedial legislation, but they ignore that the Governor closely followed

the legislative process—and took positions on various bills and amendments within *hours* of their proposal.[2] Indeed, the Governor wasted no time tweeting his views as the legislation emerged. *See, e.g.* https://twitter.com/ GovernorQuinn/status/338000476404580353 (last visited June 4, 2013) ("SB2139 is wrong for #IL. We need strong gun laws that protect the people of our state & this bill puts public safety at risk"); https://twitter.com/GovernorQuinn/status/33800068438 3350788 (last visited June 4, 2013) ("I will not support this SB2193 and I will work with members of the #IL Senate to stop it in its tracks"); https://twitter.com/GovernorQuinn/status/339478339855187969 (last visited June 4, 2013) ("Sen. @KwameRaoul's HB183 provides a reasonable framework that would protect critical gun safety ordinances across #IL"). His views—and strategy—are likely quite well-formed.

---

[2] *See, e.g.* Thomas Frisbie, *Quinn discusses Springfield's concealed carry bills*, Chicago Sun-Times (May 20, 2013), available at http://blogs.suntimes.com/ backtalk/2013/05/_gov_pat _quinn_talks.html (last visited June 3, 2013); *Quinn: Concealed carry bill puts public at risk*, WPSD 6 (May 24, 2013), available at http://www.wpsdlocal6.com/news/local/Quinn-Concealed-carry-bill- puts-public-at-risk-208851981.html (last visited June 3, 2013); *Quinn prefers Illinois Senate gun-carry measure*, WPSD 6 (May 28, 2013), available at http://www.wpsdlocal6.com/home/ticker/Illinois-Senate-panel-defeats-House-gun-bill-209220881.html (last visited June 3, 2013).

7. Any balance of hardships clearly weighs against further staying the mandate, as Defendants' motion promises no end in sight. Their citation to the Illinois Constitution is incomplete. While it is true that "[t]he Illinois Constitution affords the Governor sixty days to review the Act and sign it into law," Motion at 2, ¶ 4 (citing Ill. Const. (1970) art. IV, § 9(b)), that same section also provides for an additional, protracted legislative process:

> The Governor may return a bill together with specific recommendations for change to the house in which it originated. The bill shall be considered in the same manner as a vetoed bill but the specific recommendations may be accepted by a record vote of a majority of the members elected to each house. Such bill shall be presented again to the Governor and if he certifies that such acceptance conforms to his specific recommendations, the bill shall become law. If he does not so certify, he shall return it as a vetoed bill to the house in which it originated.

*See* Ill. Const. (1970) art. IV, § 9(e).

Thus, under Illinois law, the Governor may wait until July 30 to present either a regular or amendatory veto—and he may yet veto the bill again if he does not certify that an amended bill "conforms to his specific recommendations." *Id*.

However, the most likely outcome of a veto, regular or amendatory, would be a decisive override. A veto may be overriden by a 3/5ths vote of both houses. *See* Ill. Const. (1970) art. IV, § 9(c). The remedial legislation passed the Senate by a vote of 45-12-1 (76.27% of 59 seat chamber).[3] It passed the House by a vote of 89-28 (75% of 118 seat chamber).[4] If the Governor wishes to express himself further, let him do so—as did the Legislature—within this Court's generous 180 day stay. After all, nothing *required* the state to enact a new law. The carrying of handguns is largely unregulated in several states.

The new, lengthier stay would extend through July 8. But there is no guarantee that another stay would not be sought through the Governor's deadline to act on July 30 (assuming no petition for certiorari is filed by July 22), and critically, the motion does not commit

---

[3] *See* http://ilga.gov/legislation/votehistory/98/senate/ 09800HB0183_05312013_001000T.pdf (last visited June 3, 2013).

[4] *See* http://ilga.gov/legislation/votehistory/98/house/ 09800HB0183_05312013_038002C.pdf (last visited June 3, 2013); http://ilga.gov/legislation/votehistory/98/house/09800HB0183_05312013 _038001C.pdf  (last visited June 3, 2013); http://ilga.gov/legislation/ votehistory/98/house/09800HB0183_05312013_038000C.pdf (last visited June 3, 2013).

the Governor to let the legislative process end one way or another by either date.

The public cannot have any "interest in allowing the challenged laws to remain in effect," Motion at 4, ¶ 8, where those laws were declared to violate a fundamental constitutional right nearly six months ago, and where over three-quarters of each legislative house has voted to enact a broad remedial compromise.

8.    Notwithstanding this Court's decision, Defendants continue to operate under the impression that the Second Amendment is a public harm, rather than a public good. Not so. The right to bear arms advances the interest in personal self-defense. Public safety is jeopardized each and every day that the right is denied to the people of Illinois. Perhaps some harm would befall the public in the absence of regulation—but the Constitution is primarily concerned with the very real harm inflicted upon the public in the absence of a right to bear arms. The public's interest lies in having the state respect constitutional rights. The Governor should accept the fact that the vote totals in favor of the remedial legislation reflect the People's will far better than does Defendants' motion for additional delay.

## Conclusion

The motion should be denied.

Dated: June 4, 2013 Respectfully submitted,

/s/ David G. Sigale /s/ Alan Gura
David G. Sigale* Alan Gura
Law Firm of David G. Sigale, P.C. Gura & Possessky, PLLC
739 Roosevelt Road, Suite 304 101 N. Columbus St., Ste.405
Glen Ellyn, IL 60137 Alexandria, VA 22314
630.452.4547/630.596.4445 703.835.9085/703.997.7665

*Counsel of Record /s/ David D. Jensen
David D. Jensen
David Jensen PLLC
111 John Street, Suite 230
New York, NY 10038
212.380.6615/917.591.1318

# CERTIFICATE OF SERVICE

I certify that on June 4, 2013, I electronically filed the foregoing with theClerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


    /s/ David G. Sigale
    David G. Sigale